**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| STERLING DORSEY : | |
| Plaintiff : | |
| v : | Civil Action No. JFM-06-971 |
| WARDEN, *et al.* : | |
| Defendant : | |

o0o

## MEMORANDUM

Pending in the above-captioned civil rights action are defendants' motions to dismiss or for summary judgment. Papers No. 16 and 18. Although plaintiff was advised of his right to file an opposition in response to the motions and of the consequences of failing to do so, he has filed nothing further in this case. *See* Papers No. 17 and 19. Upon review of the papers filed, and in light of plaintiff's failure to oppose the motions, the court finds a hearing in this matter to be unnecessary. Local Rule 105.6 (D. Md. 2004). For the reasons that follow, defendants' motions, construed as motions for summary judgment, will be granted.

Background

Plaintiff alleges he was been deprived of adequate medical care for stab wounds sustained on January 8, 2006, while incarcerated at Eastern Correctional Institution (ECI). Papers No. 1 and 4. In addition, he claims that officers failed to protect him from the assault because they were not at their assigned security posts. *Id*. Plaintiff asserts that he suffers from black-outs and nerve damage as a result of the assault and has not received proper medical attention despite continued complaints. *Id*. In addition he claims, as part of his allegation that officers failed to protect him, that ECI failed to comply with a 1997 Division of Correction policy which requires prisons to install cameras with recording devices to monitor housing units and other common areas of the prison. *Id*.

Correctional defendants, Warden Green, former Commissioner Sizer, and Chief of Security Dryden admit that plaintiff was stabbed approximately 11 times in the neck, back and left hand. Paper No. 6 at p. 2 and Ex. 1.   Plaintiff was sent to Peninsula Regional Medical Center for medical treatment of his injuries, which were determined to be non-life threatening.  *Id*.  After he was transported to the hospital, it was determined that plaintiff needed surgery on his injured hand. Surgery was performed on January 9, 2006, the day following the attack.  *Id*. at Ex. 2.  Plaintiff never identified the inmates who stabbed him and claimed he did not know why he had been assaulted.  *Id*. at Ex. 1, pp. 9 and 19.

Defendants further assert that officers were at their assigned posts when plaintiff was attacked, but did not witness the assault.  Paper No. 16 at Ex. 3.  Upon discovering that plaintiff had been stabbed, officers immediately escorted him to the prison medical unit for treatment.  *Id*. Defendants state that there is no policy requiring installation of video cameras in housing units, and note that there are cameras installed in the shower areas of all ECI housing units and on the segregation unit tiers.  *Id*.  On the date plaintiff was assaulted he was assigned to a general population housing unit at ECI.  *Id*.

Defendant Correctional Medical Services, Inc. (CMS) asserts that the medical care plaintiff received was constitutionally adequate.  Paper No. 18 at p. 6.  Upon plaintiff's return from the hospital on January 12, 2006, he was observed and treated in the prison infirmary where he was provided with antibiotics, Tylox for general pain and Neurontin for nerve pain.  *Id*. at Ex. A.  On January 13, 2006, physical therapy was ordered for plaintiff's arm and hand, which he received up to March 24, 2006, by which time he had recovered full range of motion in his hand and increased reflexes in his arm.  *Id*.

Plaintiff was kept in the prison infirmary until February 16, 2006, when he was sent back to his housing unit. He was provided with Tylenol and a medical order for assignment to a lower bunk. On February 28, 2006, Plaintiff was examined by an off-site neurology consultant who noted that: plaintiff's electromyogram showed moderate sensory median nerve neuropathy; his reflexes were symmetric in both arms; he had moderate weakness in his left hand; and his incision was healing. Paper No. 18 at Ex. A. The consultant also noted that plaintiff's cooperation with the examination was questionable. *Id*. Further treatment in response to plaintiff's sick call requests included a prescription for Tylenol and Motrin for pain and Vistaril to help plaintiff sleep. *Id*. On April 20, 2006, Dr. Jalali examined plaintiff and ordered a consultation with a plastic surgeon because some neurological changes were noted. *Id*.

Plaintiff was seen by a plastic surgeon on May 2, 2006, who noted that plaintiff voiced multiple complaints regarding his left arm and hand including a claim that he was experiencing electric shock sensations all over his body. *Id*. As a result of the examination, the plastic surgeon recommended a consultation with a hand and arm specialist at the University of Maryland Medical System. *Id*. On May 4, 2006, plaintiff underwent a psychiatric evaluation and was placed on antipsychotic medication. *Id*. Shortly thereafter, on June 11, 2006, plaintiff began complaining that he was having a magnetic reaction to all metal items in his cell and that he had numbness and paralysis in his right arm. Upon examination by prison medical staff the following day, plaintiff claimed that he had a bullet in his chest from a ten-year-old gunshot wound and that the bullet had moved from one side of his chest to the other. *Id*. He also re-stated his claim that he was experiencing an allergic reaction to metal, and refused to take of an electrocardiogram. *Id*. Plaintiff was provided Motrin and told to follow up with medical staff the next day. *Id*. When plaintiff again

3

reported the same complaints, Physicians Assistant Ford provided him with Tylenol and Vistaril and told plaintiff to come back if the pain did not subside.

On June 15, 2006, Dr. Jalali complied with the recommendations of the plastic surgeon who had examined plaintiff, ordered a consultation with a hand and arm specialist at UMMS, and prescribed Neurontin for plaintiff's nerve pain. On July 13, 2006, plaintiff was seen by the specialist at UMMS who noted plaintiff complained he experienced tingling sensations all over his body and perseverated about metal causing him pain.[1]  *Id*.

Plaintiff's care continued in August of this year when he was seen by Dr. Pablo for his complaints that his Neurontin had been discontinued as of July 1, 2006.  Dr. Pablo noted that plaintiff was not in severe pain and no longer needed Neurontin.  Motrin was given to plaintiff instead. *Id*.  On August 25, 2006, plaintiff was seen by the Regional Medical Director, Dr. Berhane, who ordered another neurology consultation at UMMS so it could be determined if plaintiff had neuropathy of the median and ulnar nerves of his left hand.  *Id*.

Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v.*

---

[1] Perseveration is "constant repetition of a meaningless word or phrase, or uncontrollable repetition of a previously appropriate or correct response, even though that response has become inappropriate or incorrect for the questions asked." *Id*.

*Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)).

There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Analysis

Deliberate Indifference to Serious Medical Needs

In order to state an Eighth Amendment constitutional claim for denial of medical care, plaintiff must demonstrate that defendants' acts (or failures to act) amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Furthermore, mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

Based upon the undisputed evidence submitted, it is clear that the medical care provided to plaintiff for his serious medical needs surpasses that which is minimally required under the Constitution. Indeed, defendants have been diligent in providing plaintiff with medical care and

6

have made many attempts to address his numerous problems, notwithstanding evidence that some of his symptoms may be exacerbated by psychological issues.

## Failure to Protect from Violence

In order to prevail plaintiff must establish that the defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339–40 (4th Cir. 1997).

The sole basis for plaintiff's claim that correctional officers failed to protect him from an assault is that the officers assigned to the area were not at their posts. Paper No. 4. Defendants have submitted evidence that the allegation is not true and plaintiff has failed to refute that evidence. *See* Paper No. 16 at Ex. 3. There is no allegation that defendants knew or should have known that there existed a specific known risk of harm to plaintiff and failed to act in light of that information. While the attack on plaintiff was serious, there is no evidence that defendants failed to take steps to prevent it. Accordingly, defendants are entitled to summary judgment in their favor with respect to this

claim.

       A separate order granting summary judgment in favor of all defendants follows.


October 30, 2006                      /s/
Date                                     J. Frederick Motz
                                          United States District Judge